IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SE PROPERTY HOLDINGS, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | NO. CV-21-214 |
| | * | |
| THE MITCHELL COMPANY, INC., | * | |
| SURVIVOR, LLC, HOLIDAY ISLE, LLC, | * | |
| and JDC ACQUISITION CORPORATION, | * | |
| | * | |
| Defendants. | | |

## **COMPLAINT**

Comes now plaintiff SE Property Holdings, LLC ("SEPH") and files its Complaint, alleging against defendants The Mitchell Company, Inc. ("Mitchell"), Survivor, LLC ("Survivor"), JDC Acquisition Corporation ("JDC"), and Holiday Isle, LLC as follows:

## **PARTIES**

1. Mitchell is an Alabama corporation with its principal place of business in Mobile, Alabama.

2. Survivor is an Alabama limited liability company. None of the members of Survivor are citizens of Ohio and, upon information and belief, all of the members of Survivor are citizens of Alabama. Therefore, Survivor is a citizen of Alabama for purposes of diversity jurisdiction.

3. Holiday Isle, LLC is an Alabama limited liability company. Its sole member is Survivor, which is a citizen of Alabama. Therefore, Holiday Isle, LLC is a citizen of Alabama for purposes of diversity jurisdiction.

4. JDC is an Alabama corporation with its principal place of business in Alabama.

5. SEPH is an Ohio limited liability company with its principal place of business located in Newark, Ohio. On February 16, 2012, Vision Bank ("Vision") merged with and into SEPH. SEPH is Vision's successor by merger. SEPH has one member, Park National Corporation. Park National Corporation is an Ohio corporation with its principal place of business in Newark, Ohio.

## JURISDICTION

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of costs and interest, and because there exists complete diversity of citizenship between the plaintiff and the defendants.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and the real property that is the subject of the action is situated in this district.

## FACTS

8. Mitchell is a wholly owned subsidiary of JDC. The owners of JDC were, at the relevant times, John Saint and/or his family limited partnership (50%), Chester Stefan (25%), and Don Kelly (25%).

9. Mitchell is indebted to SEPH pursuant to two judgments totaling $24,015,350.67.

10. Both judgments arise from Mitchell's guaranties of loans by SEPH's predecessor, Vision, to Bama Bayou, LLC (f/k/a Riverwalk, LLC, hereinafter "Bama

Bayou"), in connection with a real estate development project known as Bama Bayou (f/k/a Riverwalk). Vision's loans to Bama Bayou and Bama Bayou's subsidiary, Marine Park, LLC ("Marine Park") were made in 2005, 2006, and 2007.

11. Vision's loans to Bama Bayou matured, and Vision extended the maturity dates numerous times to give Bama Bayou and Marine Park more time to secure other financing.

12. Bama Bayou and Marine Park were unable to find such other financing, and they defaulted in December of 2008.

13. Vision demanded payment from Bama Bayou, Marine Park, Mitchell, and the other guarantors, but the borrowers and guarantors refused to pay.

14. Vision filed suit against the borrowers and guarantors, including Mitchell, to collect the debt in January 2009. Vision's suit was styled *Vision/SEPH v. Bama Bayou, LLC et al.*, Civil Action No. 2009-900085, in the Circuit Court of Mobile, Alabama (the "Bama Bayou case").

15. Two judgments were ultimately entered in favor of SEPH and against Mitchell for a total of $24,015,350.67. Two other judgments were entered in favor of another lender and against Mitchell for millions of dollars.

16. Since these judgments were entered, Mitchell has not voluntarily paid any money to SEPH.

17. The year 2006 marked the start of a decline for Mitchell that accelerated rapidly over the next few years and resulted in the complete demise of Mitchell.

18. Other than Vision/SEPH's lawsuit, approximately 20 lawsuits were filed during the 2007-2009 time period against Mitchell. The year 2009 was the last year that Mitchell's parent corporation, JDC, ever filed tax returns.

19. Holiday Isle was a condominium project on Dauphin Island. The developer of the project was Holiday Isle, LLC.

20. Holiday Isle, LLC was a wholly owned subsidiary of Mitchell until its transfer to Survivor as described herein.

21. The Holiday Isle project was financed at least in part through an approximately $50 million dollar loan and promissory note.

22. Holiday Isle, LLC defaulted on its obligations to its lender (which was originally AmSouth but following a series of mergers and/or assignments became RBC Centura Bank and then RBC Real Estate Finance Inc.), which ultimately scheduled a foreclosure sale for October 24, 2008.

23. On October 23, 2008, in an effort to stop the foreclosure sale from occurring, Holiday Isle, LLC filed for Chapter 11 protection in the United States Bankruptcy Court for the Southern District of Alabama (the "first bankruptcy case").

24. The petition for Holiday Isle, LLC's first bankruptcy case was signed by Mitchell as its sole member.

25. A bankruptcy plan was confirmed, but Holiday Isle, LLC failed to meet the sales requirements thereunder, and its lender notified it that a foreclosure sale was being scheduled for July 23, 2010.

26. Holiday Isle, LLC filed for Chapter 11 bankruptcy again on July 23, 2010 (the "second bankruptcy case").

27. The petition for Holiday Isle, LLC's second bankruptcy case was signed by Mitchell as Holiday Isle, LLC's sole member. The second bankruptcy case was dismissed on September 9, 2010.

28. The Deepwater Horizon oil spill began on April 20, 2010. The well was declared sealed on September 19, 2010.

29. Holiday Isle, LLC submitted a claim (the "BP claim") to the Deepwater Horizon Claims Center ("DWHECC") in or around June 2012 pursuant to the class action settlement of claims for economic loss or property damage arising out of the oil spill. In its BP claim, Holiday Isle, LLC represented to the DWHECC that its member was Mitchell.

30. Survivor was originally organized in 1996 under the name Model Homes, LLC, but the name was changed to Survivor on or about March 17, 2011.

31. Survivor's members included John Saint, Don Kelly, Chester Stefan, and Paul Wesch. At some point in time, Survivor's members also included Chris Sylvester and Frank Gammon. All of Survivor's members were employed by or otherwise affiliated with Mitchell. John Saint, Don Kelly, and Chester Stefan owned the majority of Survivor.

32. On April 11, 2012, an Assignment of L.L.C. Interest was executed conveying Holiday Isle, LLC to Survivor (the "Assignment"). The purported assignor under the Assignment was JDC. The Assignment states that, pursuant to Holiday Isle, LLC's Articles of Organization and Operating Agreement, Mitchell was the sole member of Holiday Isle, LLC. The Assignment, however, provides that "Holiday Isle, LLC is now composed of" JDC as its sole member.

33. Upon information and belief, Mitchell never assigned Holiday Isle, LLC to JDC. Don Kelly, one of the principals of JDC and a member and manager of Survivor, was not aware of any assignment of Holiday Isle, LLC from Mitchell to JDC. Nor was Don Kelly aware of any consideration provided for any such assignment or any documents reflecting any such assignment.

34. The reason for the assignment of Holiday Isle, LLC to Survivor was to ensure that the ultimate proceeds of Holiday Isle, LLC's BP claim would be received by Survivor instead of Mitchell. Mitchell, Survivor, and the owners of both entities, knew that if the proceeds of Holiday Isle, LLC's BP claim went to Holiday Isle, LLC while it was owned by Mitchell, the proceeds would have flowed to Mitchell and been taken by Mitchell's creditors, such as SEPH. Mitchell was dormant and completely insolvent at this time. At a deposition, Don Kelly testified that, at the time of this assignment, Holiday Isle, LLC was the only asset of Mitchell.

35. To the extent Mitchell did actually assign Holiday Isle, LLC to JDC before Holiday Isle, LLC was assigned to Survivor, it was an indirect fraudulent transfer from Mitchell to Survivor. Alternatively, it was a fraudulent transfer from Mitchell to JDC and a subsequent fraudulent transfer from JDC to Survivor.

36. At the time of the assignment of Holiday Isle, LLC, Survivor was an insider of Mitchell and JDC. The members of Survivor included the owners of JDC (which owned Mitchell) as well as individuals who worked for Mitchell and/or The Mitchell Company, LLC, another entity owned by Don Kelly, Chester Stefan, and John Saint.

37. Survivor knew the financial condition of Mitchell and it knew or had reasonable cause to believe that Mitchell was insolvent.

38. The purpose of the transfer of Holiday Isle, LLC to Survivor was to hinder, delay, and/or defraud creditors of Mitchell, including SEPH, by moving the Holiday Isle, LLC and its valuable BP claim into an entity not owned by Mitchell.

39. The April 11, 2012 Assignment of L.L.C. Interest whereby Holiday Isle, LLC was transferred to Survivor states that Mitchell is indebted to Survivor in the amount of $3,755,692.  To the extent any part of the purpose of the transfer of Holiday Isle, LLC to Survivor was in satisfaction of indebtedness, or any other indebtedness of Holiday Isle, LLC, Mitchell, or JDC to Survivor, it was for an antecedent debt.  The financial statements for Mitchell for the year 2006 indicate an amount of $3,315,990 owed to Model Homes, LLC, which was Survivor's name at that time.  At a deposition, Don Kelly testified that he did not know the nature of any indebtedness of Mitchell to Survivor and he had no knowledge of any documentation regarding the nature of such indebtedness.

40. The transfer of Holiday Isle, LLC to Survivor was unknown to SEPH, and it was not reasonably knowable by SEPH, until October 2020 when, during the post-judgment/collection phase of the Bama Bayou case, Paul Wesch moved to intervene in the Bama Bayou case and interplead funds.  In his filings, Wesch stated that Holiday Isle, LLC was solely owned by Survivor.  Wesch further stated that Holiday Isle, LLC had received $622,257.89 in connection with its BP claim.  Until then, SEPH was aware that Holiday Isle, LLC had been a subsidiary of Mitchell, but it did not know, and it had no reasonable way of knowing, that Holiday Isle, LLC had been transferred to Survivor (or that Holiday Isle, LLC had filed a BP claim).

## **COUNT ONE**
**Actual Fraudulent Transfer**
**Ala. Code § 8-9A-4(a)**

41. SEPH incorporates and realleges all of the facts and matters set forth in the paragraphs above.

42. The direct or indirect transfer of Holiday Isle, LLC by Mitchell to Survivor was an actual fraudulent transfer pursuant to Ala. Code § 8-9A-4(a).

43. Mitchell directly or indirectly transferred Holiday Isle, LLC to Survivor with the intent of hindering, delaying, or defrauding its creditors, including SEPH.

44. Alternatively, Mitchell transferred Holiday Isle, LLC to JDC with the intent of hindering, delaying, or defrauding its creditors, including SEPH, and JDC subsequently, and also for fraudulent purposes, transferred Holiday Isle, LLC to Survivor.

45. Survivor was not a good faith transferee. The majority of Survivor was owned by the owners of JDC (and thus Mitchell). The other owners of Survivor were at the time of transfer (or previously) employees of Mitchell. Thus, the owners and employees of Mitchell continued to control Holiday Isle, LLC (through Survivor) after the transfer to Survivor. Survivor was aware of the claims against Mitchell, including SEPH's claims against Mitchell, and it was aware of Mitchell's insolvency.

46. SEPH's claims arose before the transfer of Holiday Isle, LLC.

47. Mitchell was insolvent at the time of the transfer.

48. Mitchell had no other substantial assets after the transfer.

49. The transfer was concealed from Mitchell's creditors, including SEPH.

50. Before the transfer, Mitchell had been sued and threatened with suit.

WHEREFORE, SEPH seeks a judgment against Survivor in the amount of the value of the asset transferred, plus punitive damages, attorney's fees and costs. In the alternative, if a judgment against Survivor is not available, SEPH requests that the Court set aside the fraudulent transfer and declare any such transfers (and any subsequent transfers) null and void. SEPH requests such other, different and additional relief as the Court may deem proper, the premises considered, including all relief available under the Alabama Uniform Fraudulent Transfer Act.

## COUNT TWO
### Constructive Fraudulent Transfer
### Ala. Code §§ 8-9A-4(c) 9-9A-5(a)

51. SEPH incorporates and realleges the facts and matters set forth in the paragraphs above.

52. The direct or indirect transfer of Holiday Isle, LLC by Mitchell to Survivor was a constructive fraudulent transfer pursuant to Ala. Code § 8-9A-4(c) and Ala. Code § 8-9A-5(a).

53. Alternatively, the transfer of Holiday Isle, LLC by Mitchell to JDC was a constructive fraudulent transfer, and JDC's subsequent transfer of Holiday Isle, LLC to Survivor was a subsequent fraudulent transfer.

54. SEPH's claim arose before the transfer of Holiday Isle, LLC.

55. Neither JDC nor Mitchell received reasonably equivalent value in exchange for the transfer.

56. Mitchell was engaged in transactions for which its remaining assets were unreasonably small, and Mitchell knew or believed, or should have known or believed, that it would incur debts beyond its ability to pay as they became due.

57. Mitchell was insolvent at the time of the transfer or as a result of the transfer.

WHEREFORE, SEPH seeks a judgment against Survivor in the amount of the value of the asset transferred, plus punitive damages, attorney's fees and costs. In the alternative, if a judgment against Survivor is not available, SEPH requests that the Court set aside the fraudulent transfer and declare any such transfers (and any subsequent transfers) null and void. SEPH requests such other, different and additional relief as the Court may deem proper, the premises considered, including all relief available under the Alabama Uniform Fraudulent Transfer Act.

## COUNT THREE
### Constructive Fraudulent Transfer - Antecedent Debt
### Ala. Code § 8-9A-5(b)

58. SEPH incorporates and realleges the facts and matters set forth in the paragraphs above.

59. SEPH's claim arose before the transfer of Holiday Isle, LLC.

60. Mitchell transferred Holiday Isle, LLC to an insider, namely Survivor, for an antecedent debt (*i.e.*, the debt of Model Homes, LLC/Survivor to Mitchell reflected on the year 2006 financial statements of Mitchell). Alternatively, Mitchell transferred Holiday Isle, LLC to JDC for an antecedent debt, and JDC subsequently transferred Holiday Isle, LLC to Survivor.

61. Mitchell was insolvent at the time of the transfer.

62. Survivor knew or had reasonable cause to believe that Mitchell was insolvent.

WHEREFORE, SEPH seeks a judgment against Survivor in the amount of the value of the asset transferred, plus punitive damages, attorney's fees and costs. In the alternative,

if a judgment against Survivor is not available, SEPH requests that the Court set aside the fraudulent transfer and declare any such transfers (and any subsequent transfers) null and void. SEPH requests such other, different and additional relief as the Court may deem proper, the premises considered, including all relief available under the Alabama Uniform Fraudulent Transfer Act.

## COUNT IV
### Alter Ego / Instrumentality

63. SEPH incorporates and realleges the facts and matters set forth in the paragraphs above.

64. Mitchell and Survivor, as the sole members of Holiday Isle, LLC at different times, exercised control over Holiday Isle, LLC to such an extent that it was their mere adjunct, instrumentality, or alter ego.

65. Mitchell and Survivor dominated Holiday Isle, LLC's finances, policy and business practices to such an extent that it had no separate mind, will, or existence of its own.

66. At the relevant times, Holiday Isle, LLC functioned solely to achieve the purposes of Mitchell and Survivor.

67. Mitchell and Survivor misused their control over Holiday Isle, LLC to the detriment of SEPH by causing a fraudulent conveyance to an insider to avoid debts owed by Mitchell.

68. Mitchell and Survivor have engaged in wrongful conduct with respect to their use of Holiday Isle, LLC as an alter ego or instrumentality, and it would be unjust to allow them to hide behind the corporate form of Holiday Isle, LLC.

WHEREFORE, SEPH requests that this Court pierce the corporate veil of Holiday Isle, LLC and declare it to be the alter ego of Survivor if a judgment is entered against Survivor. Alternatively, if the Court avoids Mitchell's transfer of Holiday Isle, LLC rather than entering a judgment against Survivor, then SEPH requests that the Court order that its judgments against Mitchell in the Bama Bayou case can be collected from Holiday Isle, LLC because it is the alter ego of Mitchell.

## COUNT V
### Conspiracy

69. SEPH adopts and incorporates the facts and matters set forth in the paragraphs above.

70. Mitchell, Survivor, JDC, Holiday Isle, LLC agreed with each other to commit the fraudulent transfers described herein in order to harm SEPH and other creditors.

71. Further, one or more of the defendants committed an overt act to achieve the underlying tort.

72. As a result, SEPH was harmed.

WHEREFORE, SEPH requests that this Court enter a judgment for compensatory and punitive damages against JDC, Survivor, Mitchell, and Holiday Isle, LLC.

        Respectfully submitted,


        */s/ J. Blair Newman, Jr.*
        ARCHIBALD T. REEVES, IV
        areeves@mcdowellknight.com
        J. BLAIR NEWMAN, JR.
        bnewman@mcdowellknight.com
        Attorney for SE Property Holdings, LLC


OF COUNSEL:

MCDOWELL KNIGHT ROEDDER
  & SLEDGE, LLC
11 North Water St., Ste. 13290
Mobile, Alabama  36602
(251) 432-5300
(251) 432-5303 (fax)

CERTIFICATE OF SERVICE

PLAINTIFF WILL SERVE THE DEFENDANTS VIA U.S. POSTAL SERVICE CERTIFIED MAIL RETURN RECEIPT REQUESTED AT THE FOLLOWING ADDRESSES:

Holiday Isle, LLC
c/o Don Kelly
41 W. I-65 Service Rd N. - Ste. 300
Mobile, AL 36608

Survivor, LLC
c/o Don Kelly
41 W. I-65 Service Rd N. - Ste 300
Mobile, AL 36608

The Mitchell Company, Inc.
c/o Don Kelly
41 W. I-65 Service Rd N. - Ste 300
Mobile, AL 36608

JDC Acquisition Corporation
c/o Don Kelly
41 W. I-65 Service Rd N. - Ste 300
Mobile, AL 36608

*/s/ J. Blair Newman, Jr.*
COUNSEL